No. 19,836.

HARRY BRICE, *Appellant*, V. EMMA HAWK, *Appellee.*

SYLLABUS BY THE COURT.

1. PROMISSORY NOTE—*Holder in Due Course before Maturity—Question for Jury.* Where a firm of real-estate dealers received a promissory note as their commission for services in negotiating a land trade, and the maker became dissatisfied with the trade, and the real-estate dealers and their attorney held a conference with the attorney for the maker to consider a cancellation of the contract and the surrender of the note, and the maker's attorney apprised them of the defenses to the enforcement of the contract, among which were want of consideration and fraud on the part of the payees, the question whether the attorney for the payees who afterwards acquired the note before maturity was a holder in due course and without notice of its infirmities was properly submitted to the jury, and a general verdict and judgment against him will be sustained.

2. SAME—*Evidence—Properly Stricken from Record.* The affirmative responses of a witness to two conclusions of law couched in the form of leading questions examined and held to have been properly stricken from the record.

Appeal from Finney district court; GEORGE J. DOWNER, judge. Opinion filed January 8, 1916. Affirmed.

*Harry Brice,* of Cimarron, *H. O. Trinkle,* of Garden City, *L. A. Madison,* of Dodge City, and *C. M. Williams,* of Hutchinson, for the appellant.

*Albert Hoskinson, R. W. Hoskinson,* and *Edgar Foster,* all of Garden City, for the appellee.

The opinion of the court was delivered by

DAWSON, J.: Sometime in 1912 Gonder & McDonald, a real-estate firm in Cimarron, arranged a real-estate deal between Benewell Cline and Emma Hawk and her husband. For this service Emma Hawk, the appellee, gave Gonder & McDonald her promissory note for $1280, dated August 7, 1912, and due October 1, 1912.

Not long afterwards Emma Hawk became dissatisfied with the deal and employed a Garden City lawyer to protect her interests. About September 7, 1912, the appellant, Harry

Brice, a lawyer and abstracter of Cimarron, called on Mrs. Hawk's lawyer in Garden City, on behalf of Gonder & Mc-Donald, seeking to effect a settlement of the trouble about the land deal between Hawk and Cline. Gonder and McDonald were also present at the conference. There was some discussion of a settlement whereby the note and land contract should be canceled. Mrs. Hawk's attorney contended that they could not enforce the contract; that Mrs. Hawk "had been taken advantage of, and on account of her age and inexperience in such matters and the condition of Mrs. Hawk's health as well as her mind."

Mrs. Hawk's attorney testified:

"There was nothing said as to the enforcement or the collection of the note for the same reason. We discussed both the note and the contract, the discussion was with reference to a settlement by the delivery of the note and the cancellation of this contract. Of course I could n't say at that time that there was any defense to the note outside of what would be to the contract, because that is the first time I knew there was a note.

"I first heard of the note from Mr. Brice. I heard his testimony in which he said that I stated at that time, that I did not know anything about the note and that I said if she had given a note she would probably have to pay it, . . . My theory was that the payment of this note was by way of compromise to secure the cancellation of that contract."

The appellant's testimony in part reads:

"Well, all that was said about the note, Mr. Hoskinson did n't know there was a note given at that time, and he said the contract could be set aside; but he did n't know about the note, and I said 'What are you going to do about this note given by Mrs. Hawk?' and he said, 'Of course, if there is a note, they will have to pay it.'"

No settlement was effected. A lawsuit followed between Benewell Cline and Emma Hawk over the land contract, in which the appellant, Harry Brice, was attorney for Cline.

About two weeks after the conference in Garden City, between Mrs. Hawk's attorney and Gonder, McDonald and Brice, the note was endorsed by the payees to Brice and he brought this action on it.

The record shows that Mrs. Hawk prevailed in the action brought by Cline, and Brice, as his attorney; but whether that suit was commenced or whether Brice had been employed by Cline to prepare and file that suit before Brice acquired the note from Gonder & McDonald is not shown.

Among the several defenses to the note were want of con-

sideration, fraud on the part of the payees, and plaintiff's notice of the note's infirmities before he acquired it.

The appellant testified that the note was transferred to him in consideration of services as a lawyer and also for an equity in a quarter section of land. Then he testified:

"Q. And you bought this note for a valuable consideration, before maturity? A. Yes, sir.

"Q. And without knowledge of any defense against it? A. Yes, sir.

"Whereupon the defendant moved the court to strike from the record that part of the testimony of the witness in regard to buying this note for a valuable consideration, same being a question of law.

"Motion sustained and that part of testimony stricken out and withdrawn from the consideration of the jury, by the court.

"To which ruling of the court, the plaintiff, at the time duly excepted."

The jury returned a general verdict for the defendant; and this appeal seeks a review of the ruling of the district court recited above.

The time when the note was acquired by Brice, the consideration, the facts pertinent to show the good faith of Brice, his knowledge of the Cline-Hawk land trade for which the note was given to his clients, his employment and efforts to settle the controversy about the land trade—every pertinent fact necessary to determine the question of notice to plaintiff was in evidence. The two questions which brought the affirmative responses from the witness added no additional facts to what had been already developed. They were objectionable as merely calling for the affirmative assent of the witness to mere conclusions couched in the form of leading questions by plaintiff's counsel.

No question is raised touching the sufficiency of defendant's proof to show want of consideration on the part of Gonder & McDonald, so that phase of the case need not be reviewed.

It is urged that appellant relied upon the statement of Mrs. Hawk's counsel: "If she had given a note, she would probably have to pay it." Mrs. Hawk's attorney heard of the note for the first time in that conversation, and his answer was based upon the theory, as he testified, "That the payment of this note was by way of compromise to secure the cancellation of that contract." The facts were submitted to the jury under careful and appropriate instructions, to which no exceptions were taken, and the result can not be disturbed.

The judgment is affirmed.